IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SCOTT FISCHER,                    )
                                  )
     Plaintiff,                   )
                                  )
     v.                           )     1:12CV392
                                  )
GLAXOSMITHKLINE, LLC,             )
                                  )
     Defendant.                   )

### MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

The instant matter comes before the undersigned United States Magistrate Judge for a ruling on Plaintiff's Motion for Remand to State Court (Docket Entry 16) and a recommended ruling on Defendant GlaxoSmithKline LLC's Motion to Dismiss (Docket Entry 7). (See Docket Entry dated June 28, 2012.)[1] For the reasons that follow, the Motion for Remand will be denied and the Motion to Dismiss should be granted.

### I. Background

Plaintiff Scott Fischer was prescribed the drug Paxil in 2004 "for the treatment of obsessive compulsive disorder and anxiety." (Docket Entry 4, ¶ 2.)[2] Over the next five years, while

---

[1] For reasons stated in William E. Smith Trucking, Inc. v. Rush Trucking Ctrs. of N.C., Inc., No. 1:11CV887, 2012 WL 214155, at *2-6 (M.D.N.C. Jan. 24, 2012) (unpublished), the undersigned United States Magistrate Judge opts to enter an order rather than a recommendation regarding remand.

[2] Plaintiff's Complaint contains two paragraphs designated "2." (See Docket Entry 4.)

continuously taking the drug, Plaintiff claims he experienced increasing depression, suicidal ideation, and irresistible urges to consume alcohol. (Id. ¶¶ 5-10.) During that time, Plaintiff alleges he "required extensive psychiatric care, frequent visits with his medical doctor, could not maintain employment, lost relationships with friends and family, was unable to enjoy life and hobbies, and experienced severe mental and physical pain and suffering as a result of his side effects[.]" (Id. ¶ 12.) In March of 2009, "Plaintiff was hospitalized for six days in the intensive care unit" as a result of an attempted suicide by overdosing on prescription medications. (Id. ¶ 10.) Plaintiff was then taken off Paxil and reported that, "after only three weeks, [his] cravings subsided and feelings of depression and suicidal ideation dissipated." (Id. ¶ 11.)

Plaintiff subsequently brought this suit in North Carolina state court against GlaxoSmithKline, LLC ("GSK"), the manufacturer of Paxil. (See Docket Entry 4.) Plaintiff's Complaint alleges the following claims: (1) "Product Liability - Failure to Warn" (id. ¶¶ 13-17); (2) "Negligence" (with regard to GSK's "duty to exercise reasonable care in the manufacture and marketing of prescription medications, and [] duty to monitor safety" (id. ¶ 19)) (id. ¶¶ 18-23); and (3) "Negligence" (with regard to GSK's "duty to research and properly test prescription medications before seeking approval to release a drug onto the market" (id. ¶ 25)) (id. ¶¶ 24-29). On

2

April 18, 2012, GSK petitioned for removal to this Court. (Docket Entry 1.) GSK thereafter filed the instant Motion to Dismiss (Docket Entry 7), to which Plaintiff never responded (see Docket Entries dated April 19, 2012 to present). Plaintiff filed the instant Motion for Remand to State Court. (Docket Entry 16.) GSK timely responded. (Docket Entry 18.)

## II. Motion to Remand

*A. Standard for a Motion to Remand*

"The burden of demonstrating jurisdiction resides with the party seeking removal." Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (en banc) (internal quotation marks omitted). A federal court must "construe removal jurisdiction strictly because of the significant federalism concerns implicated." Id. (internal quotation marks omitted). If federal jurisdiction appears doubtful, then the federal court must remand the action to state court. Id.

If a federal court has original jurisdiction of a state court case, i.e., the case could have originally been filed in federal district court, then a defendant may remove that state court case to the federal district court embracing the place where the action is pending "[e]xcept as otherwise provided." 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over civil actions "where the amount in controversy exceeds the sum or value

3

of $75,000" and the parties are "citizens of different states." 28 U.S.C. § 1332(a).

### B. *Diversity Jurisdiction*

Plaintiff argues that GSK:

> has <u>a</u> principal place of business in Raleigh, North Carolina[,] . . . maintains a registered agent in North Carolina, markets and sells prescription drugs to North Carolina citizens, their [sic] products are consumed by North Carolina citizens, and [GSK] has purposefully availed itself to [sic] North Carolina law and North Carolina court's [sic] jurisdiction by benefiting [sic] and seeking protections under North Carolina law and maintaining <u>a</u> place of business in North Carolina.

(Docket Entry 17 at 2 (emphasis added).) Plaintiff therefore contends that GSK is "subject to the jurisdiction of North Carolina courts" (<u>id.</u> at 3), and, presumably, that no diversity of citizenship exists.[3]

---

[3] Plaintiff does not contest that the amount in controversy meets the jurisdictional minimum of $75,000.00. (<u>See</u> Docket Entry 17.) Furthermore, each of the three claims in the Complaint requests that "the Court award monetary damages for personal injury against the Defendant, GlaxoSmithKline, LLC., in an amount that exceeds $10,000.00, to be determined at trial, plus costs, for any further relief that this Honorable Court determines necessary and appropriate, and a trial by jury." (Docket Entry 4, ¶¶ 17, 23, 29.) Plaintiff alleges that "during the years [he] was prescribed and taking Paxil [i.e. June 2004 through March 2009], [he] required extensive psychiatric care, frequent visits with his medical doctor, could not maintain employment, lost relationships with friends and family, was unable to enjoy life and hobbies, and experienced severe mental and physical pain and suffering as a result of his side effects[.]" (<u>Id.</u> ¶ 12.) Plaintiff also indicated in a demand letter to GSK that "he would be fully compensated for his injuries with a payment of $1 million." (Docket Entry 1-2 at 2-3.) The foregoing evidence supports a conclusion that the amount in controversy exceeds the jurisdictional minimum. <u>See</u> <u>Daqiel v. Kemper Corp.</u>, Civil No. 1:11cv262, 2012 WL 1596978, at *2 (W.D.N.C. May 7, 2012)

4

Plaintiff confuses the standard for determining <u>subject matter</u> jurisdiction based on diversity of citizenship with the standard for <u>personal</u> jurisdiction, see <u>International Shoe Co. v. State of Wash.</u>, 326 U.S. 310, 316-20 (1945).  For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has <u>its</u> principal place of business . . . ."  28 U.S.C. § 1332(c)(1) (emphasis added).  "The word 'place' is in the singular, not the plural."  <u>Hertz Corp. v. Friend</u>, __ U.S. __, __, 130 S. Ct. 1181, 1192 (2010).  Moreover, the United States Supreme Court has interpreted "principal place of business" as "the place where a corporation's officers direct, control, and coordinate the corporation's activities[,]" otherwise known as the corporation's "nerve center."  <u>Id.</u>

Plaintiff's Complaint acknowledges that GSK "is [] registered in England and Wales, with a registered agent in Raleigh, North Carolina, and a <u>principal office</u> in Philadelphia, Pennsylvania."

---

(unpublished) ("[T]he Court may determine the amount in controversy by considering all evidence bearing on the issue, including: 'the type and extent of the plaintiff's injuries and the possible damages recoverable therefore, including punitive damages if appropriate.  The possible damages recoverable may be shown by the amounts awarded in other similar cases.  Another factor for the court to consider would be the expenses or losses incurred by the plaintiff up to the date the notice of removal was filed.  The defendant may also present evidence of any settlement demands made by the plaintiff prior to removal.'" (quoting <u>Green v. Metal Sales Mfg. Corp.</u>, 394 F. Supp. 2d 864, 866 (S.D.W. Va. 2005))).

5

(Docket Entry 4, ¶ 2 (emphasis added).) Plaintiff further concedes that GSK is incorporated in Delaware. (Docket Entry 17 at 2.)

The fact that GSK does business and has <u>a</u> place of business in North Carolina does not mean that GKS has <u>its principal place of business</u> in North Carolina. Furthermore, the citizenship of a limited liability company like GSK is determined by that of its members. <u>General Tech. Applications, Inc. v. Exro Ltda</u>, 388 F.3d 114, 120 (4th Cir. 2004). GSK's sole member is GlaxoSmithKline Holdings, Inc. ("GSK Holdings"). (<u>See</u> Docket Entry 18 at 2.)[4] GSK asserts that "GSK Holdings' officers direct, control, and coordinate GSK Holdings' activities primarily from Delaware," and therefore "GSK Holdings is a Delaware citizen, and by extension GSK LLC is also a Delaware citizen." (<u>Id.</u>)[5] Plaintiff has failed to make any showing to the contrary. (<u>See</u> Docket Entry 17 at 2-3.)

---

[4] Plaintiff did not contest this matter by replying to GSK's Response, which set forth this information. (<u>See</u> Docket Entries dated June 8, 2012 to present.)

[5] Other courts addressing the specific question of exactly where GSK maintains its principal place of business have split, with some identifying its principal place of business as Philadelphia, Pennsylvania, and others concluding that GSK's principal place of business lies in Delaware. <u>Compare</u> <u>Brewer v. SmithKline Beecham Corp.</u>, 774 F. Supp. 2d 721, 730 (E.D. Pa. 2011), <u>with</u> <u>Johnson v. SmithKline Beecham Corp.</u>, __ F. Supp. 2d__, __, 2012 WL 1057435, at *6 (E.D. Pa. Mar. 29, 2012). As GSK points out, whether GSK is a citizen of Delaware or Pennsylvania "is of no consequence in this action because Plaintiff's North Carolina citizenship nonetheless results in complete diversity between the parties." (Docket Entry 18 at 2 n.1.)

Under these circumstances, the record does not support a finding that GSK has its principal place of business in North Carolina. Whether such principal place is, consistent with Plaintiff's allegations, in Pennsylvania (Docket Entry 4, ¶ 2) or, as GSK contends, in Delaware (Docket Entry 18 at 2), does not matter. Plaintiff claims citizenship in North Carolina, not in either Pennsylvania or Delaware. (See Docket Entry 4, ¶ 1.) At this point, the Court concludes that complete diversity of citizenship exists.

### C. *Burford* Abstention

Plaintiff also contends that the Court should abstain from hearing this case under the doctrine set out in Burford v. Sun Oil Co., 319 U.S. 315 (1943), because "this action is more appropriate for proceedings in a North Carolina state court." (Docket Entry 17 at 3.) The Burford Doctrine states:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 361 (1989) (internal quotation marks omitted).

The Burford Doctrine does not apply to the case at hand. First, this case does not involve the Court "sitting in equity," id. To the contrary, Plaintiff's prayers for relief request monetary damages. (See Docket Entry 4, ¶¶ 17, 23, 29.) "The Supreme Court has recently made clear that a district court may abstain from exercising its jurisdiction and dismiss a case under *Burford* 'only where the relief being sought is equitable or otherwise discretionary.'" Gross v. Weingarten, 217 F.3d 208, 223 (4th Cir. 2000) (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 731 (1996)).

Second, Plaintiff has shown neither that this case involves "difficult questions of state law" that "bear[] on policy problems of substantial public import" (see Docket Entry 17 at 3), nor that allowing the case to proceed in federal court would disrupt state policy (see id.). Instead, Plaintiff merely states that "North Carolina's product's [sic] liability statute is North Carolina specific legislation that provides manufacturers with significant protections. Due to the intricacies of [N.C. Gen. Stat. §] 99B, this action is more appropriate for proceedings in a North Carolina state court." (Id.)

The fact that a cause of action arises from state law does not warrant abstention. To so find would render diversity jurisdiction effectively moot. Furthermore, federal courts routinely entertain product liability suits based on North Carolina law. See, e.g.,

8

Fussman v. Novartis Pharm. Corp., No. 1:06CV149, 2011 WL 5836928 (M.D.N.C. Nov. 21, 2011) (unpublished) (Beaty, C.J.) (upholding jury verdict in failure to warn case under N.C. Gen. Stat. 99B-5); Couick v. Wyeth, Inc., 691 F. Supp. 2d 643 (W.D.N.C. 2010) (interpreting N.C. Gen. Stat. 99B and North Carolina state court case law concerning product liability claims in deciding summary judgment motion); Stoddard v. Wyeth, Inc., 630 F. Supp. 2d 631 (E.D.N.C. 2009) (same). Plaintiff has offered no compelling reason for this Court to abstain where other federal courts have not.

*D. Undue Burden*

Plaintiff finally asserts that removal to federal court would unduly burden him. (Docket Entry 17 at 3.) His argument, in its entirety, appears as follows:

> [Plaintiff] has been found to be disabled and has suffered with many medical issues, some as a result of taking Paxil and some not. [His] physical and mental condition restricts him from leaving his home on some days. Due to the state of his physical and mental health, it would be unduly burdensome for him to be required to travel to the Federal District Court for the Middle District of North Carolina if and when this action proceeds to trial.

(Id.)

Although the Court sympathizes with Plaintiff, he has cited no authority in support of the position that the burden of traveling to a federal court location rather than to a state court location authorizes remand of an otherwise properly removed case and the Court similarly has found no support for such position.

9

### III. Motion to Dismiss

Plaintiff's case warrants dismissal both because of Plaintiff's failure to respond to the instant Motion and because Plaintiff's Complaint fails to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Under this Court's Local Rules, failure to respond to a motion generally warrants granting the relief requested. See M.D.N.C. LR7.3(k). Plaintiff has offered no explanation to the Court for said failure in either his Motion for Remand or the accompanying memorandum of law. (See Docket Entries 16 & 17.) Accordingly, the Court should follow its general rule and dismiss the action.

In addition, Plaintiff's case should be dismissed because North Carolina's statute of limitations bars his claims. Under North Carolina law, a plaintiff must bring a cause of action for personal injury within three years, and

> the cause of action shall not accrue until bodily harm to the claimant . . . becomes apparent or ought reasonably to have become apparent to the claimant, whichever occurs first.

N.C. Gen. Stat. § 1-52(16). Plaintiff's Complaint indicates that he became aware of the alleged side effects of Paxil as early as June of 2004 (Docket Entry 4, ¶ 5 ("[P]laintiff . . . first reported negative side effects connected to the administration of Paxil on June 26, 2004," including depression and alcohol craving)), and that, in September of 2005, Plaintiff "believed Paxil was causing [his] depression and cravings for alcohol and

10

that the medication was no longer benefitting him because the help with anxiety was outweighed by the negative side effects" (id. ¶ 9). The harm Plaintiff alleges thus "[became] apparent," N.C. Gen. Stat. § 1-52(16), over six years before he initially filed his claim in state court on March 16, 2012 (see Docket Entry 4), well outside the three-year statute of limitations. Therefore the Court should grant GSK's Motion to Dismiss. See Koehler v. Rite-Aid Pharmacy, No. 3:12-cv-00046, 2012 WL 896144, at *2 (W.D.N.C. Mar. 15, 2012) (unpublished) (dismissing plaintiff's pharmaceutical product liability claim as barred by North Carolina statute of limitations where plaintiff became ill over three years before filing suit); see also Jones v. Bock, 549 U.S. 199, 215 (2007) ("If the allegations [of a complaint] show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . .").

## IV. Conclusion

Diversity jurisdiction exists in this case and no proper grounds permit abstention. Furthermore, the North Carolina statute of limitations for claims involving personal injury bars Plaintiff's action.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Remand to State Court (Docket Entry 16) is **DENIED.**

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion to Dismiss (Docket Entry 7) be granted.

                                                /s/ L. Patrick Auld
                                                       **L. Patrick Auld**
                                        **United States Magistrate Judge**

December 28, 2012